IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

| | |
|---|---|
| In re<br>TERESA WHITNEY,<br><br>    Debtor,<br>_____<br><br>TERESA WHITNEY,<br><br>    Appellant,<br><br>-v-<br><br>ROBERT G. DRUMMOND,<br>Chapter 13 Trustee,<br><br>    Appellee. | CV 07-35-H-CCL<br>Bankruptcy No. 04-62483-13<br><br><br><br><br>OPINION and ORDER |

*******

This case comes before the Court as an appeal from a final decision of the U.S. Bankruptcy Court of the District of Montana ("Bankruptcy Court"). Appellant Debtor Teresa Whitney ("Whitney") filed a notice of appeal to the Bankruptcy Appellate Panel of the Ninth Circuit Court of Appeals. Appellee Robert G. Drummond, Chapter 13 Trustee ("Trustee") filed a notice of election of have the appeal heard by the U.S. District Court, pursuant to 28 U.S.C. § 158(c)(1). This Court has jurisdiction

over the appeal pursuant to 28 U.S.C. § 158(a)(1).

LEGAL STANDARD

A district court's legal standard of review over a bankruptcy appeal is the same standard that circuit courts use to review district court decisions. *See Ford v. Baroff*, 105 F.3d 439, 441 (9th Cir. 1997). The bankruptcy court's conclusions of law are reviewed *de novo* and factual findings are reviewed for clear error. *See In re International Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Mixed questions of law and fact are reviewed *de novo*. *Hernandez v. Pizante*, 186 B.R. 484, 488 (9th Cir. B.A.P. 1995).

A bankruptcy plan is construed as a contract, and courts look to state law for guidance in interpreting a plan. *In re Bartleson*, 253 B.R. 75, 84 (9th Cir. B.A.P. 2000). Questions of contract interpretation are subject to *de novo* review. *Id.* at 78-79.

BACKGROUND

Whitney originally filed her voluntary petition for Chapter 13 bankruptcy in August, 2004. Whitney's gross wages totaled

2

$1,850 per month, with payroll deductions and insurance deductions in the amount of $387.02. Whitney's other monthly income came in the form of alimony ($42/month); "George's contribution to household" ($1,402.00/month); and projected tax refunds[1] ($250/month). Whitney's monthly income then totaled $3,156.98 per month. The Bankruptcy Court confirmed an Amended Chapter 13 Plan that committed Whitney to making $75 payments per month for 60 months, committed Whitney to submit her "future projected earnings and other income" to the supervision and control of the Court," (Plan, ¶ 1, Document 7-4), and committed her to reporting any changes in income to the Trustee. In 2005, Whitney's tax refund for tax year 2004 exceeded her projected tax refund by $1468, so Whitney offered to pay, and did in fact pay, the excess tax refund to the Trustee. In 2007, Whitney received an interim statement, dated April 19, 2007, from the Trustee that indicated that Whitney had made $3868.00 in total payments as of that date. On the next day, April 20, 2007, Whitney wrote a check to the Trustee for $632.00, bringing her total payments to

---

[1] On Schedule "I" Whitney projected an annual tax refund of $3,000, which she represented as $250 in monthly income over a twelve-month period.

3

$4,500.00.  Approximately two weeks later, on May 3, 2007, 28 months before the 60-month Plan period was to close, Whitney filed a "Debtor's Motion for Discharge Following Full Payment of Plan."

The Trustee filed an objection to the Motion for Discharge, asserting that Whitney had not completed her payments under the Plan and that under the Plan she had committed her excess tax refunds in addition to (not as credit toward) the $75 payment due each month for the 60-month Plan period.

On June 7, 2007, the Bankruptcy Court denied Whitney's Motion for Discharge Following Full Payment of Plan.

DISCUSSION

Whitney's main argument is under Paragraph 5 of the Plan, she committed herself to paying only her "projected disposable income," which is $75 per month, for the duration of the 60-month Plan.[2]  Having paid this $4,500 sum early, Whitney believes

---

[2] Paragraph 5 provides:

> 5. The Debtors [sic] will commit all projected disposable income to payments under the Plan and shall report any changes in income to the Trustee

4

herself to be entitled to an early discharge.

Trustee responds that Whitney ignores Paragraph 1 of the Plan, whereby she submitted her "future projected earnings *and other income*" to the control of the Court for the duration of the Plan.[3]  Furthermore, the Trustee points out that Whitney is required under the Plan to report any changes in income to the Trustee, as is required by statute.  *See* 11 U.S.C. § 1325(b)(2)(B).  The purpose of this provision is to allow the Trustee to seek a modification of the Plan from the Court in the event that an evaluation of a debtor's finances reveals that the Debtor has more disposable income than projected by the bankruptcy plan.

---

            as required by 11 USC § 1325(b)(2)(B).

[3]  Paragraph 1 provides:

1. The future projected earnings and other income of the Debtors [sic] is submitted to the supervision and control of the Court, and the Debtors [sic] shall pay the Trustee pursuant to the following schedule:

    $75.00 per month for 60 months.
    Total Plan Payments: $4,500.00

   It is contemplated that this plan will take 60 months to complete.

It is well to note, at this point, that Whitney drafted the Plan. The Trustee did not object to the Plan, which was confirmed by the Bankruptcy Court.

In its denial of Whitney's Motion for Discharge, the Bankruptcy Court concluded that Whitney's Plan was ambiguous in that it included the "other income" language in Paragraph 1 but failed to include that language in Paragraph 5. It may be a stretch to state that the Plan is ambiguous, however. Although the "other income" language is left out of Paragraph 5, there is instead language in Paragraph 5 that requires Whitney to "report any changes in income to the Trustee as required by 11 USC § 1325(b)(2)(B)." (Plan, ¶ 5, Document 7-4.) The obvious purpose of having a debtor disclose changes in income is to allow the Trustee to demand that the debtor make additional payments or to allow the Trustee to request the Bankruptcy Court to modify the Plan to increase the debtor's monthly payments. This is consistent with Paragraph 1, whereby Whitney commits to the control of the Court all of her "future projected earnings" and her "other income" during the duration of the Plan. Although Paragraph 5 neglects to restate Whitney's commitment of all her

6

"other income" during the duration of the Plan, Paragraph 5 is not inconsistent with Paragraph 1.  Again, it may be somewhat of a stretch to conclude that there is any ambiguity between Paragraph 1 and Paragraph 5, but if there is no ambiguity, the only reasonable interpretation would favor the Trustee, not Whitney.  I accept, therefore, the Bankruptcy Court's conclusion that the Plan is ambiguous.

An ambiguous bankruptcy plan is to be construed against the debtor drafter.  *In re Westside Print Works, Inc.*, 180 B.R. 557, 560 (9th Cir. B.A.P. 1995); *see also*, Mont. Code Ann. § 28-3-206 "Uncertainty to be resolved against party causing it." ("[I]n the case of a contract between a public officer or body, as such, and a private party, it is presumed that all uncertainty was caused by the private party").  Given this ambiguity, the Bankruptcy Court arrives at the most reasonable interpretation of the Plan, which is that "the Debtor's confirmed Chapter 13 Plan provides that Debtor will contribute all 'other income' to her Plan for a period of 60 months."  (Bankruptcy Court Memorandum, June 7, 2007, Document 7-14 at 5.)

This temporal requirement that Whitney submit her projected

7

disposable income and any other income for a period of 60 months is the best way to give meaning to both Paragraph 1 and Paragraph 5.  Otherwise, Whitney and Trustee could have merely settled upon the sum certain of $4,500, and allowed Whitney to pay it forthwith in order to be rid of the Bankruptcy Court's five-year supervision of her finances.  However, such a settlement is not permitted by the Bankruptcy Code.  At the time Whitney's Plan was confirmed in 2004, Section 1325(b)(4)(B) of Title 11 provided that "the 'applicable commitment period'–may be less than 3 or 5 years, whichever is applicable under subparagraph (A), *but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.*"  In other words, the Plan that Whitney thinks she drafted would not have conformed to the Bankruptcy Code and could not have been confirmed by the Bankruptcy Court.  Nor can it be so interpreted today.

The Bankruptcy Court correctly points out that Whitney did not file a motion seeking to foreshorten her Plan period. Instead, Whitney raced to make a "final" payment and then raced to the courthouse to obtain a discharge.  However, without either paying her creditors in full or obtaining a Plan modification

8

confirmed by the Bankruptcy Court, Whitney is in no position to claim that she has completed her payments under the Plan.  This Court agrees with the Bankruptcy Court's determination that Whitney has not completed her payments under the Plan, by making payment for 60 months of her "projected disposable income" (*i.e.,* the $75 monthly payment) *and* by submitting all her "other income" to the control of the Bankruptcy Court for the 60-month period. "[T]here is nothing inequitable or contrary to the Bankruptcy Code, in requiring that debtors go through the plan modification process in order to pay their chapter 13 plans off early without paying allowed creditor claims in full."  *In re Schiffman*, 338 B.R. 422, 435 (Bankr. D.Or. 2006).

## CONCLUSION

Upon a *de novo* review of the record, this Court concludes that the Bankruptcy Court was correct in deciding that Whitney is not entitled to an entry of discharge because she has not completed all of her payments required by her Plan.  Whitney's Chapter 13 Plan committed her to pay monthly payments for a period of five years, a period which cannot be shortened absent a modification of Whitney's Plan unless her unsecured creditors are

paid in full.  Therefore, the Bankruptcy Court's denial of Whitney's Motion for Discharge is AFFIRMED.

Done and dated this 25th day of January, 2008.

_____
CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE

10